# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JEROME L. LUMPKIN, ) | CASE NO.  1:09-cv-00113 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE VECCHIARELL |
| v ) | |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|   Commissioner of Social Security, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. | |

Claimant, Jerome L. Lumpkin ("Lumpkin"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Lumpkin's applications for a period of Disability Insurance Benefits ("DIB") under Title II Of the Social Security Act, 42 U.S.C. § 416 (i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is REVERSED and REMANDED.

## I. Procedural History

Lumpkin filed his applications for DIB and SSI on November 16, 2004, alleging

disability beginning October 15, 2004.  His applications were denied initially and upon reconsideration. Lumpkin timely requested an administrative hearing.

Administrative Law Judge ("ALJ"), Peter R. Bronson, held a hearing on September 7, 2007, at which Lumpkin, who was represented by counsel, and Nancy J. Borgeson, vocational expert ("VE") testified.  The ALJ issued a decision on June 27, 2008 in which he determined that Lumpkin was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Lumpkin filed an appeal to this Court.

On appeal, Lumpkin claims the ALJ erred by: 1) failing to give sufficient weight to the opinion of Lumpkin's treating pulmonary specialist; 2) failing to properly assess Lumpkin's credibility; and 3) failing to fully develop the record after the hearing but prior to issuing his opinion.  The Commissioner disputes Lumpkin's claims.

## II. Evidence

### A. Personal and Vocational Evidence

Lumpkin was born on August 28, 1972.  Transcript ("Tr.") 70.  He was 32 years old at the time of his alleged onset of disability and 35 years old at the hearing.  Lumpkin earned a GED and attended college for approximately two years.  He did not earn a college degree.  (Tr. 349).  Lumpkin worked in a warehouse where, among other things, he drove a towmotor.  He also worked as a semi-truck driver.  (Tr. 370-373).

### B. Medical Evidence

On October 8, 2004 Lumpkin presented to St. Vincent Charity Hospital ("St. Vincent") emergency room with an upper respitory infection and cough.  (Tr. 209).  An X-ray revealed extensive right lung bulla.  (Tr. 210).  On November 11, 2004, he

presented to St. Vincent emergency room with respitory symptoms and was diagnosed with acute bronchitis.  (Tr. 204-205).  On December 12, 2004, he presented to St. Vincent emergency room complaining of chest pain.  He was diagnosed with acute bronchitis and bullous emphysema.  (Tr. 200-201).

On January 10, 2005, Lumpkin underwent a CT scan of his thorax, which had been ordered by Joseph Sopko, M.D.  The CT scan revealed severe emphysematous changes on the lungs with multiple bilateral confluent air cysts, right side greater than the left, occupying the majority of the right thorax and density within the thorax medially just lateral to the heart believed to represent a portion of collapsed middle lobe.  (Tr. 193).  Pulmonary functions studies performed the same day indicated a severe obstructive lung defect and a moderate restrictive lung defect.  (Tr. 195-196).  The testing showed Lumpkin's FEV1 (forced expiratory volume in one second) to be 1.41 before administration of a bronchodialator and 1.76 afterwards.  FVC (forced vital capacity) measures were 2.22 before administration of a bronchodialator and 2.45 afterwards.  (Tr. 197).

On February 14, 2005, Lumpkin presented to Todd Hochman, M.D. for a consultive examination.  (Tr. 173-174).  Lumpkin complained of shortness of breath.  Lumpkin stated that he is able to walk one flight of steps and approximately one half block before becoming short of breath.  Dr. Hochman reviewed Lumpkin's pulmonary function tests and confirmed that the tests indicate both obstructive and restrictive disease.  Dr. Hochman noted that Lumpkin continued to treat with Dr. Sopko, a pulmonologist, and is currently taking Albuterol and Atrovent.  Dr. Hochman's examination revealed a prolonged expiratory phase and diffuse wheezing.  (Tr. 173-

174).  A chest X-ray taken the same day indicated massive bullae in the right lung with streaky fibrotic changes in the remnant of the aerated pulmonary parenchyma.  The interpreting radiologist opined that Lumpkin had chronic pulmonary obstructive disorder ("COPD"), with extensive bullae formation on the right.  (Tr. 180).  Dr. Hochman opined that Lumpkin would not have difficulty with work related physical activities such as walking short distances, standing for brief periods of time, sitting, writing, or carrying and lifting lighter objects.  He may, however have difficulty with walking long distances, prolonged standing, or carrying and lifting heavier objects.  (Tr. 175).

On March 3, 2005, Myung Cho, medical consultant, completed a physical residual functional capacity report.  (Tr. 182-189).  Cho opined that Lumpkin could carry 10 pounds occasionally and less than 10 pounds frequently.  He could stand and/or walk at least two hours of an eight hour workday and could sit for about six hours of an eight hour workday.  His ability to push and/or pull is unlimited except as shown for lift and/or carry.  (Tr. 183).  Lumpkin could occasionally climb ramps or stairs but could never climb ladders, ropes, or scaffolds.  (Tr. 184).  Lumpkin should avoid even moderate exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.  (Tr. 186).

Lumpkin presented to Dr. Sopko on March 11, 2005 for emphysema.  (Tr. 191). On May 20, 2005, Lumpkin again presented to Dr. Sopko for emphysema.  At that time, Lumpkin told Dr. Sopko that he was taking Spira, but not Abuterol.  Dr. Sopko diagnosed severe COPD and added Albuterol to Lumpkin's treatment.  (Tr. 212-213).

On January 30, 2006, Lumpkin presented to St. Vincent emergency room with chest pain, made worse by coughing or taking deep breaths.  He also complained of

4

bilateral shoulder pain that he had been having for four or five months.  (Tr.  251-253).  On examination, Lumpkin had decreased breath sounds and bardycardia (slow heart rate).  (Tr. 254).  An X-ray taken that day revealed severe emphysematous changes of the right lung with linear scars/ atelectases into the right hilar area and right lung base that had increased.  It also showed increased left sided interstitial markings with reticular nodular pattern and bibasilar interstitial infiltrates which can indicate nonspecific interstitial pneumonitis and increased emphysematous changes of the left apex.  (Tr. 260).

On February 10, 2006, Lumpkin presented to Dr. Sopko for follow up.  (Tr. 247).  At a March 31, 2006 follow up appointment, Dr, Sopko noted that Lumpkin was compliant with his medication, and his emphysema was stable.  (Tr.  246).  Lumpkin presented to Dr. Sopko in May 2006 complaining of COPD (Tr. 245); in July 2006, chief complaint illegible (Tr. 242); in August 2006, complaining of asthma (Tr. 237); in October 2006, chief complaint illegible (Tr. 233); in December 2006, complaining of shortness of breath for three weeks (Tr. 221); and in March 2007, chief complaint illegible.  (Tr. 221).

On July 21, 2006, Dr. Sopko completed a medical source statement.  Dr. Sopko stated that his assessment was based on Lumpkin's pulmonary function tests.  Dr. Sopko opined that Lumpkin could: 1) lift less than five pounds occasionally and frequently; 2) stand and/or walk for two hours total in an eight hour day and for 20 minutes without interruption; and 3) sit for four hours total in an eight hour day and for two hours without interruption.  (Tr. 215).  Dr. Sopko further opined that Lumpkin needed rest periods in addition to a morning break, a lunch period, and an afternoon

5

break.  (Tr. 216).  Lumpkin could rarely or never climb, balance, stoop, crouch, or crawl.  (Tr. 216).  He could occasionally reach, push, pull, and perform gross manipulations.  (Tr. 216).  He could frequently handle, feel, see, hear, speak, and perform fine manipulations.  (Tr. 216).  Lumpkin's ability to work at heights, around moving machinery, in temperature extremes, and around chemicals, dust, noise, or fumes was restricted.  (Tr. 216).  Dr. Sopko noted that Plaintiff had a breathing machine prescribed, but a cane, walker, brace, or TENS unit had not been prescribed.  (Tr. 216).

On November 3, 2006, Lumpkin presented to the emergency room for knee pain.  (Tr. 222).  He had an antalgic gait, and weight bearing caused increased pain.  (Tr. 223).  X-rays of Lumpkin's knees revealed soft tissue swelling and minimal degenerative changes.  (Tr. 230).  He was diagnosed with degenerative joint disease.  (Tr. 223).

Lumpkin presented to Dr. Sopko on August 31, 2007 with upper respiratory symptoms.  He was diagnosed with an upper respiratory infection.  (Tr. 297).

On October 17, 2007, Lumpkin presented to the emergency room complaining of a cough and stomach pain.  (Tr. 289).  He was diagnosed with pneumonia and admitted to the hospital.  (Tr. 290).  An X-ray taken on that day showed a slight increase in the size of the large bulla in Lumpkin's right lower lung.  Most of the right upper lung contained multiple bulla with compression of related intervening lung.  (Tr. 288).  Lumpkin was discharged on October 20, 2007.  (Tr. 293).

While Lumpkin was in the hospital he developed gastrointestinal problems.  He underwent an endoscopic examination on October 22, 2007 which revealed mild patchy gastritis and mild candida esophagitis.  (Tr. 295).

On October 31, 2007, Lumpkin underwent pulmonary function testing with A. Greblich, M.D., consultive examiner.  Lumpkin's forced vital capacity (FVC) was 1.64 prior to administration of a bronchodilator, and 2.09 afterward.  His forced expiratory capacity at 1 second (FEV1) was 1.12 prior to administration of a bronchodilator, and 1.47 afterward.  (Tr. 276).  Lumpkin's carbon monoxide diffusion capacity (DLCO) was 64% (16.5).  (Tr. 283).  Dr. Greblich stated that these results indicated, "very severe restrictive and severe obstructive ventilatory defect."  (Tr. 276).

On December 14, 2007, Frank Cox M.D. provided his answers to an interrogatory questionnaire that had been submitted to him by the ALJ.[1]   Dr. Cox noted that when he answered the interrogatories, he did not have his notes from the file or the hearing; but the new pulmonary studies indicate that Lumpkin has severe restrictive and obstructive ventilatory defect.  (Tr. 285).  He opined that the pulmonary impairments did not meet or equal a Listing because, while the pre-bronchodilator levels were below listing level, the post-bronchodilator levels were above.  However, Dr. Cox noted that, "the FEV1 barely made it [above listing level] and the FVC was only 50% of the predicted level."  (Tr. 286).  Dr. Cox opined that, "with significant other impairments there could easily be an equals."  (Tr. 285).  Dr. Cox opined that Lumpkin could lift 15 pounds occasionally and 10 pounds frequently.  He should avoid all air pollutants and extremes in temperature.  He could not use ladders or scaffolds, but could occasionally use the stairs.  (Tr.  286).

On February 14, 2008, Lumpkin presented to the St. Vincent emergency room complaining of a "bad feeling in the back of his throat."  (Tr. 332).  Lumpkin declined admission to the hospital at that time.

---

[1]Dr. Cox was the medical expert who testified at the September 7, 2007 hearing.

On February 21, 2008, Lumpkin underwent a right upper lobe resection surgery with removal of the bulla. (Tr. 328-330). Post operative X-rays on February 23, 2008 showed surgical changes with a suspected pneumothorax. (Tr. 321). X-rays on February 26, 2008 showed post thoractomy changes and unchanged tiny right pneumothorax. (Tr. 318).

### C. Hearing Testimony

Lumpkin testified that he received his GED and attended some college. (Tr. 348-349). Other than working briefly through a temporary agency from November 2005 to January 2006, Lumpkin had not worked since 2003 or 2004. (Tr. 349-350).

Lumpkin testified that he can lift a five pound sack of sugar but cannot carry it far. (Tr. 252). He can walk two or three minutes before having to stop. He can stand five to ten minutes before getting dizzy. (Tr. 352). He can sit for approximately 30 to 40 minutes before having difficulties. (Tr. 352). He cannot crawl. (Tr. 353). Lumpkin uses a ramp at home in lieu of stairs. (Tr. 353). Lumpkin testified that he has pain in his knees, but he has not received treatment for it. (Tr. 354).

Frank Cox, M.D. testified as a medical expert. Dr. Cox explained that Lumpkin suffers from a unique form of emphysema in which large blisters, known as bullae, occupy space in the lung and prevent proper gas exchange. (Tr. 356). He stated that Lumpkin's pulmonary function tests indicate that Lumpkin has two processes, one of which is a restrictive process resulting from the bullae. (Tr. 356-357). Dr. Cox noted there was no recommendation for surgery in the record. (Tr. 356).

Dr. Cox testified that Lumpkin's pulmonary function levels after administration of a bronchodialator were not sufficiently low to meet a listing levels. Further, Dr. Cox

opined that Lumpkin did not have an impairment or combination of impairments that medically equals a listed impairment.  (Tr 356-357, 362).

Dr. Cox opined that Lumpkin could lift 10 pounds occasionally and 5 pounds frequently.  He could stand and/or walk for two hours our of an eight hour day; and could sit for six hours out of an eight hour day.  (Tr. 363).  He should have no exposure to pollens, fumes, dust, odors, chemicals, or noxious fumes; he should avoid extremes in temperature.  (Tr.  365).

Dr. Cox opined that Lumpkin's condition could be expected to worsen over time, and while surgery helped some patients, he did not know whether it would help Lumpkin.  (Tr. 365).  Dr. Cox recommended that Lumpkin undergo repeat pulmonary function tests, oxygen saturation testing, and DLCO.  (Tr. 383-384).

Dr. Cox testified that he did not agree with Dr. Sopko's opinion regarding Lumpkin's physical capabilities because there was nothing in the record to support such severe limitations, and they seemed to be based on Lumpkin's subjective complaints. (Tr. 379-380).

VE, Nancy Borgeson, Ph. D. also testified at the hearing.  The ALJ asked the VE to assume an individual the same age as Lumpkin, who has the same education and work experience.  (Tr. 375-76). The ALJ asked the VE to further assume that: 1) the person is limited to sedentary work, *i.e.*, he can lift up to 10 pounds occasionally and five pounds frequently; 2) he cannot more than occasionally bend, stoop, crouch, kneel, or climb ramps; 3) he cannot crawl or climb steps, ladders, ropes, or scaffolds; 4) he needs a sit/stand option; 5) he cannot work in an environment where there is exposure to fumes, chemicals, dust, or agricultural or landscaping pollens in concentrations that

9

exceed what would be in the environment outside of or away from the workplace; and 6) he cannot work in an environment with exposure to heat, cold, humidity, or dryness. (Tr. 376).

The VE testified that with such limitations, the individual could not perform Lumpkin's past work, but could perform work as an account clerk (2,300 jobs in northeast Ohio, over 11,500 jobs in Ohio, and 330,000 jobs nationally), an order clerk (400 jobs in northeast Ohio, almost 2,000 jobs in Ohio, and 48,000 jobs nationally), and an assembler (2,150 jobs in northeast Ohio, over 10,700 jobs in Ohio, and 164,000 jobs nationally).  (Tr. 377-378).  The VE then stated that the number of available assembler jobs should be decreased by 25% because Lumpkin is limited to working in a clean environment.  (Tr. 378).

The ALJ then asked the VE to consider the same individual, but to add a limitation on lifting and carrying of five pounds both occasionally and frequently. The VE testified that the additional limitation would not change the available jobs.  (Tr. 379).

Lumpkin's counsel asked the VE to consider an individual who, in addition to the limitations set forth in the ALJ's first hypothetical, would be off task 10% of the time.  The VE stated that such an individual would not be able to sustain the jobs she had previously described.  (Tr. 378-379).

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) and 20 C.F.R. §416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ made the following findings:

1. Mr. Lumpkin first met the insured status requirements of the Social Security Act on October 1, 1999, and continued and continues to meet them through June 30, 2010. (Tr. 25);

2. Mr. Lumpkin has not engaged in substantial gainful activity from October 15,

11

2004, the alleged onset date, through the date of this decision (20 CFR 404.1520(b), 404.1571 et seq.).  (Tr 25);

3. From October 15, 2004, the alleged onset date, through the date of this decision, Mr. Lumpkin had and/or has the following severe impairments (20 C.F.R. Section 404.1520(c) and 416.920(c)):

Bullous emphysema in the right lung, status post February 21, 2008 surgery, which included muscle-splitting right lateral mini-thoracotomy and resection of multiple adhesions and bands, a right upper lobectomy, and resection of blebs of the superior segment of the right lower lobe.  Chronic obstructive pulmonary disease ("COPD") ... Mild degenerative joint disease of the knees.  (Tr. 26);

4. From October 15, 2004, the alleged onset date, through the date of this decision, Mr. Lumpkin did not and does not have an impairment or a combination of impairments that met, meets, medically equaled, or medically equals one of the Listed Impairments in the Listing of Impairments, 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. 27);

5. After careful consideration of the entire record, I find that from October 15, 2004, the alleged onset date, through the date of this decision, Mr. Lumpkin had and has the residual functional capacity to perform work activities except for the following limits on his ability to work:
> Subject to the additional restrictions stated below, Mr. Lumpkin could and can do work only at the sedentary exertional level.
> Mr. Lumpkin could not and cannot lift or carry more than 10 pounds occasionally or more than 5 pounds frequently.
> Mr. Lumpkin could not and cannot bend, stoop, crouch, or kneel more than occasionally.
> Mr. Lumpkin could not and cannot crawl.
> Mr. Lumpkin could not and cannot climb ladders, ropes, or scaffolds.
> Mr. Lumpkin could not and cannot climb steps or ramps more than occasionally.
> Mr. Lumpkin must have been able and must be able to, at will, go from standing or walking to sitting and from sitting to standing or walking.
> Mr. Lumpkin could not and cannot work in an environment where there is exposure to fumes, chemicals, dust, or agricultural or landscaping pollens in concentrations that exceed what would be in the environment outside of or away from the workplace.
> Mr. Lumpkin could not and cannot work in an environment where there is exposure to extremes of heat, cold, humidity, or dryness.

(Tr 30-31, footnotes omitted);

6. Mr. Lumpkin is unable to perform any past relevant work (20 CFR Section 404.1565 and 416.965).  (Tr. 36);

7. Up to this point, the burden of proof has been on Mr. Lumpkin. However, the conclusions above now require me to assess Mr. Lumpkin's residual functional capacity, age, education, and past work experience to determine if he can make an adjustment to other work. At this point, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which Mr. Lumpkin can perform, consistent with his residual functional capacity, age, education, and work experience. 20 CFR 404.1560(c)(2) and 416.960(c)(2).  (Tr. 37);

8. Mr. Lumpkin was born on August 28, 1972. At all times from October 15, 2004, the alleged onset date, through the date of this decision, Mr. Lumpkin was and is a younger individual age 18-44 (20 CFR 404.1563 and 416.963). (Tr. 37);

9. Mr. Lumpkin has the equivalent of a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). His education did not provide for direct entry into skilled work.  (Tr. 37);

10. Mr. Lumpkin's acquired job skills were not and are not transferable to any job that Mr. Lumpkin could do or can do consistent with the residual functional capacity stated in the first paragraph of Finding #5 above. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).  (Tr. 37);

11. Considering Mr. Lumpkins's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Lumpkin can perform (20 CFR 404.1560(c), 404.1566, 416. 960(c), and 416.966).  (Tr. 37); and

12. Mr. Lumpkin has not been under a disability, as defined in the Social Security Act, from October 15, 2004, the alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).  (Tr. 39).

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  See *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings

and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI.  Analysis

Lumpkin alleges the ALJ erred by: 1) failing to accord proper weight to the opinion of his treating physician; 2) improperly assessing Lumpkin's credibility; and 3) failing to develop the record following his February 2008 lung surgery. The Commissioner disputes these claims.

#### A.  Treatment of Medical Opinions

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d

14

709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986). The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight. *Shelman v. Heckler,* 821 F.2d 316 (6th Cir. 1987).

Even when a treating physician's opinion is found not to be entitled to controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled to controlling weight, he is required to articulate good reasons for the weight given to the treating source's medical opinion. 20 C.F.R. §§ 404.1527(d) (2) and 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

In this case, the ALJ rejected Dr. Sopkos's opinion regarding Lumpkin's ability to

15

lift, carry, climb, balance, stoop, crouch and kneel, sit, stand and walk for no more than a total of six hours in an eight hour day, and his need for additional rest periods.  The ALJ rejected this opinion because Dr. Sopko's treatment notes do not support such severe limitations, and because Dr. Sopko's findings appear to be based on Lumpkin's subjective complaints and not on any independent testing.  The ALJ rejected Dr. Sopko's opinion regarding Lumpkin's ability to do gross manipulation because there is nothing in the record to explain why Lumpkin's impairments would interfere with his ability to do gross manipulation, and because it is contradicted by Dr. Sopko's opinion that Lumpkin could handle as often as frequently.  The ALJ's opinion is supported by substantial evidence.

The only objective medical finding cited in Dr. Sopko's medical source statement is Lumpkin's abnormal pulmonary function tests which Dr. Sopko cites as support for Lumpkin's lifting and carrying limitations.  Dr. Sopko does not refer to any objective medical findings to support any of the remaining limitations set forth in his opinion.  Accordingly, the ALJ found that Dr. Sopko's opinion appeared to be based on Lumpkin's subjective complaints, rather than objective medical evidence.  This finding is consistent with Dr. Cox's opinion that there were no test results or other medical evidence to support the limitations set forth by Dr. Sopko, and that they appear to be based on Lumpkin's subjective complaints.  Similarly, the ALJ correctly found that there is nothing in the record to explain why Lumpkin is limited in his ability to do gross manipulation.

A treating physician's opinion is entitled to controlling weight only when it is based on sufficient objective medical data, and it is not contradicted by other evidence in the record.  [20 C.F.R. § 404.1527(d)(3)](20 C.F.R. § 404.1527(d)(3)) and [20 C.F.R. § 416.927(d)(3)](20 C.F.R. § 416.927(d)(3)).  The ALJ correctly

found that portions of Dr. Sopko's opinion are not supported by objective medical data and are contradicted by Dr. Cox's opinion. Accordingly, the ALJ's opinion is supported by substantial evidence.

### B. Credibility Findings

Lumpkin alleges the ALJ erred in assessing his credibility. Specifically, Lumpkin argues that the ALJ erred by: 1) finding that Lumpkin exaggerated his symptoms by claiming he could not carry anything; 2) finding that Lumpkin's noncompliance with taking his medication undermined his credibility; and 3) finding that the only time Lumpkin mentioned his knee pain was at the September 2007 hearing. Lumpkin is correct.

Social Security Ruling 96-7, 1996 WL 362209 provides that when evaluating the credibility of an individual's statements regarding his symptoms and their functional effects, the ALJ must give specific reasons for the weight given to the individual's statements. The ALJ cannot rely on, "intangible or intuitive notions about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.'' Moreover, the reasons for the credibility finding, "must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 362209*6. The ALJ has failed to meet this standard.

The ALJ stated:

> If Mr. Lumpkin could not frequently carry any weight whatsoever, he would not be able to do basic activities of daily living like get dressed or wear clothes, and would not be able to take anything to medical appointments. In my opinion, Mr. Lumpkin's allegations on this subject were exaggerated–and undermine the credibility of some of his other

17

allegations.

(Tr. 32).  There are several problems with this finding.

First, the ALJ's conclusion is based on an erroneous characterization of Lumpkin's testimony.  Lumpkin never testified that he could not carry any weight whatsoever.  He testified that while he could pick up a five pound bag of sugar, he could not carry it far.  (Tr. 352).  Second, there is no evidence that an inability to frequently carry weight translates into an inability to wear clothes or take anything to medical appointments; nor is there any evidence that Lumpkin needed to carry anything to his medical appointments.  Third, the ALJ relied on this erroneous finding to discredit Lumpkin's other allegations.  The ALJ stated, "In my opinion, Mr. Lumpkin's allegations on this subject were exaggerated –and undermined the credibility of some of his other allegations." (Tr. 32).  However, the ALJ does not articulate which allegations he believes are undermined, the reasons he believes they are undermined, or the weight he ultimately gave those allegations.  Therefore, this Court cannot undertake a meaningful review of the ALJ's opinion.

Next, the ALJ finds that Lumpkin was "noncompliant with medical orders regarding his Albuterol on at least one occasion, i.e. May 20, 2005." (Tr. 33).  The ALJ's finding is accurate; however, he fails to articulate how a one time failure to take one of many medications undermines Lumpkin's credibility.  Additionally, he again fails to articulate which allegations are undermined.  Moreover, the ALJ never addressed Lumpkin's reason for not taking the medication, *i.e.* that he lost his medical coverage

18

and was unable to afford his medication. (Tr. 387).[2]

Lastly, the ALJ finds Lumpkin incredible because the only time Lumpkin alleged pain or other symptoms associated with his knees was during the September 2007 hearing.  This is not true.  On November 3, 2006 Lumpkin presented to St. Vincent emergency room with knee pain.  X-rays of Lumpkin's knees revealed soft tissue swelling and minimal degenerative changes.  (Tr. 230).  He was diagnosed with degenerative joint disease.  (Tr. 223).   Moreover, the ALJ found Lumpkin's bilateral knee degenerative joint disease to be a severe medically determinable impairment based on the x-rays taken that date.  Thus, the evidence does not support the ALJ's finding.

The ALJ's credibility findings are factually erroneous and legally insufficient. Reversal is therefore warranted.

### C.  Duty to Fully and Fairly Develop the Record

Lumpkin argues that the ALJ failed to fully develop the record because he failed to further develop the record after Lumpkin's February 21, 2008 lung surgery.  Because the Court has remanded this case for further detailed analysis of the ALJ's credibility findings, the Court declines to address this issue.  Notwithstanding this decision, the Court notes that both Lumpkin and the Commissioner have failed to adequately and thoroughly brief this issue. Lumpkin never addresses why he failed to submit any

---

[2] In his Brief on the Merits, the Commissioner states it is unclear how a lack of insurance prevented Lumpkin from taking his Albuterol when he was still taking other medication. (Commissioner's Brief on the Merits p. 16).  Lumpkin testified that he received free medication from Dr. Sopko.  (Tr. 387).  It does not follow that because an individual continues to take some medication he necessarily can afford all his medication.

19

evidence other than his surgery records despite the fact that four months passed between his surgery and the ALJ's decision.  Additionally, Lumpkin has not persuaded the Court that any further development of the record would have affected the outcome of the case.  The Commissioner does not address the issue of what effect the surgery may have had on Lumpkin's RFC, but rather limits his response to the ALJ's findings regarding the issue of listing levels.  Moreover, neither party has addressed the legal standard under which this Court should review a failure to develop the record.

For the foregoing reasons, the Court will not address this issue.

### VII.  Decision

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is REVERSED and REMANDED.

IT IS SO ORDERED.

s/*Nancy A. Vecchiarelli*
Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: October 1, 2009